UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

  Plaintiff,

 v.              Case No. 08-CR-10

MARILYN COPELAND,

  Defendant.

**RECOMMENDATION AND ORDER ON CERTAIN PRE-TRIAL MOTIONS**

### I. BACKGROUND

On January 3, 2008, a grand jury sitting in the Eastern District of Wisconsin returned a two-count indictment naming Marilyn Copeland ("Copeland") as the defendant. Count One of the indictment charges Copeland with mail fraud in violation of 18 U.S.C. § 1341, and Count Two charges Copeland with making a false statement to the Social Security Administration ("SSA") concerning rights to benefits in violation of 42 U.S.C. § 1383a(a)(2). On January 8, 2008, Copeland was arraigned and entered a plea of not guilty to both counts. Trial is currently scheduled to commence before the Honorable Charles N. Clevert on April 7, 2008.

In accordance with the pretrial scheduling order, on February 7, 2008, Copeland filed (1) a motion to dismiss Count One of the indictment pursuant to Fed. R. Crim. P. 7(c)(1); (2) a motion to dismiss the indictment due to the applicability of the defense of entrapment by estoppel; (3) a motion to dismiss the indictment for prosecutorial delay; (4) a motion to compel discovery relevant to a selective prosecution claim; and (5) a motion to suppress statements. Copeland filed a a single brief

in support of each of the motions. On February 19, 2008, the government filed its brief in response to the motions to dismiss the indictment and the motion to compel discovery. On February 25, 2008, Copeland filed her reply brief. Thus, the defendant's motions to dismiss the indictment and motion to compel discovery are now fully briefed and are ready for resolution.[1] For the reasons which follow, it will be recommended that the defendant's motions (1) to dismiss Count One of the indictment pursuant to Fed. R. Crim. P. 7(c)(1), (2) to dismiss the indictment due to the applicability of the defense of entrapment by estoppel, and (3) to dismiss the indictment for prosecutorial delay be denied. It will also be ordered that the defendant's motion to compel discovery relevant to a selective prosecution claim be denied.

According to the government, beginning in 1998 and continuing until 2005, Copeland devised a scheme to defraud the SSA with false representations while she was receiving Supplemental Security Income benefits as the representative payee for two of her sisters and her son. Specifically, the indictment alleges that on at least 27 occasions Copeland reported to the SSA that she had not received the monthly benefits check for one or more of the beneficiaries, and that based on the information received from Copeland, the SSA would send a replacement benefits check in the mail to Copeland. The indictment further alleges that Copeland would cash both the original check and the replacement check, causing her to receive double the benefits to which the beneficiaries were entitled. The indictment alleges that as a result of this "double check negotiation scheme," Copeland fraudulently received $13,080.00 from the SSA.

---

[1] On February 27, 2008, an evidentiary hearing was conducted on the defendant's motion to suppress. Post-hearing briefing on the motion to suppress will not be completed until March 7, 2008. A recommendation on the defendant's motion to suppress will therefore be issued following such briefing.

## II. DISCUSSION

**A. Motion to Dismiss Count One Pursuant to Fed. R. Crim. P. 7(c)(1)**

Count One of the indictment alleges, *inter alia*, that Copeland "knowingly devised a scheme to defraud the Social Security Administration, and to obtain money from the Social Security Administration by means of materially false and fraudulent pretenses and representations"; "[t]o effect her scheme, on at least 27 occasions, [she] reported to the [SSA] that she had not received the monthly benefits check for one or more of the beneficiaries. Based on the information received from Copeland, the [SSA] would issue a replacement benefits check and would send that replacement check via the United States Mail to Copeland. Copeland cashed both the original check and the replacement check, causing her to receive double the benefits to which [the beneficiaries] and/or Copeland were entitled. [And] [o]n or about April 29, 2005, for the purpose of executing the scheme. . . Copeland made materially false statements and representations to the [SSA], thereby causing the [SSA] to send to Copeland a replacement check through the United States Mail to which she knew she was not entitled."

Copeland argues that the indictment fails to allege sufficient facts to support the elements of mail fraud, such that Count One should be dismissed pursuant to Fed. R. Crim. P. 7(c)(1). Copeland contends that "the indictment does not allege facts to support the element of mail fraud that requires Copeland to possess the intent to defraud when she instigated the process of the mailing of the second benefits check." (Def's Mot./Mem at 8.) According to the defendant,

> The allegations in this indictment do not plainly imply that Copeland had in hand the "original" check when she communicated to SSA. In other words, there is nothing at all in the indictment about whether Copeland used fraudulent means to induce the mailing of the second benefits check. Nor is this critical fact a product of a common sense understanding of the indictment.

3

(Def's Mot./Mem. at 8.) This is significant, according to the defendant, because a "double check negotiation" occurs when a person receiving a Social Security or Supplemental Security Income (SSI) benefit check that has been issued by the U.S. Treasury reports the check missing, receives a replacement check from the SSA, and then eventually cashes both the original "missing" check and the replacement check. A double check negotiation

> does not preclude the scenario whereby a payee actually did not receive a benefit check, called in to SSA for a replacement, subsequently received both the replacement and the missing check, in any particular order, and then cashed both. This scenario is consistent with the institutional time line where a SSA benefit check is not received within three days of the established payment date, the payee may request a replacement check; replacement checks typically are received within 10 days. It appears that the government assumes that the cashing of both checks is the crime. And while these facts may constitute some other federal crime, such as theft of government monies, these facts do not and cannot constitute mail fraud.

(Def's Mot./Mem. at 9-10.)

An "indictment . . . must be a plain, concise and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). An indictment must satisfy three requirements in order to be legally sufficient. "First, the indictment must state all of the elements of the crime charged; second, it must adequately apprise the defendant of the nature of the charges so that he may prepare a defense; and third, it must allow the defendant to plead the judgment as a bar to any future prosecutions for the same offense." *United States v. Smith*, 230 F.3d 300, 305 (7th Cir. 2000). In assessing the sufficiency of an indictment courts are to review the document in its entirety, giving it a practical, rather than hypertechnical, reading. *Id.*

In setting forth the offense, it is generally acceptable for the indictment to "track" the words of the statute itself, so long as those words expressly set forth all the elements necessary to constitute the offense intended to be punished. *United States v. Hinkle*, 637 F.2d 1154, 1157 (7th Cir. 1981).

4

However, an indictment that tracks the statutory language can nonetheless be considered deficient if it does not provide enough factual particulars to "sufficiently apprise the defendant of what he must be prepared to meet." *Russell v. United States*, 369 U.S. 749, 763 (1962). In sum, "[f]acial sufficiency is not a high hurdle. Indictments need not exhaustively describe the facts surrounding a crime's commission nor provide lengthy explanations of the elements of the offense." *United States v. Bates*, 96 F.3d 964, 970 (7th Cir. 1996). "The defendant's constitutional right is to know the offense with which he is charged, not to know the details of how it will be proved." *United States v. Agostino*, 132 F.3d 1183, 1191 (7th Cir. 1997).

Copeland is charged with a violation of 18 U.S.C. § 1341. That statute, in pertinent part, provides as follows:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses [or] representations . . . causes to be deposited any matter or thing whatever to be sent or delivered by the Postal Service . . . shall be fined under this title or imprisoned not more than 30 years, or both.

Copeland's argument for dismissal of the indictment is predicated on the proposition that, by failing to allege that Copeland had the original check in her possession when she communicated to the SSA that she needed a second check, the indictment fails to set forth all of the elements necessary to constitute the crime of mail fraud. According to Copeland, the indictment sets forth elements which imply that the crime alleged is the cashing of the original check and of the replacement check, but does not set forth the element of intent to defraud, which is a necessary element of mail fraud. Copeland argues that due to the lack of specificity in the indictment, it is unclear whether she must defend against "the mere double check negotiation or an additional requirement that she used

5

fraudulent pretenses to induce the Social Security Administration to send the second check." (Def.'s Reply at 8.)

Although Copeland is correct in asserting that the indictment does not specifically allege that Copeland was in possession of the original check when she contacted the SSA to receive a replacement check, this allegation is not required for Count One of the indictment to be sufficient. The indictment need only set forth generally the elements of mail fraud in order to be sufficient. Here, the indictment tracks the language of the mail fraud statute, and sets forth the nature of the scheme that Copeland knowingly devised to defraud the SSA. Moreover, the indictment alleges that on 27 occasions Copeland reported to the SSA that she had not received her monthly check, "*causing the Social Security Administration to send to Copeland a replacement benefits check through the United States mail to which she knew she was not entitled.*" (emphasis added). The indictment further alleges that Copeland would then cash both the original and replacement check, and receive double the benefits to which she was entitled. Finally, the indictment alleges a particular mailing that was used to execute the scheme.

Simply stated, the indictment is not so lacking in factual detail that Copeland has not been apprised of what she "must be prepared to meet" at trial. Indeed, the language of the indictment apprises the defendant that she is accused of knowingly causing the SSA to mail her checks to which she knew she was not entitled. A practical reading of this language does not create the impression that Copeland simply improperly cashed two checks, but rather makes clear that Copeland knowingly devised a scheme to defraud the SSA by means of falsely reporting to the SSA that she had not received the monthly benefits checks for one or more of the beneficiaries for whom she was the representative payee. Of course, whether the government will be able to convince the jury that

6

Copeland's conduct constituted mail fraud remains to be seen, and a trial will be necessary in order to answer that question. However, the government is not required to provide in the indictment the exact details of how mail fraud will be proven at trial. Evidence of the defendant's possession of the original check at the time she contacted the SSA is not necessarily required in order to prove all of the elements of mail fraud. Consequently, to the extent that Copeland's motion to dismiss Count One is predicated on the indictment's failure to allege sufficient facts to support all of the elements of mail fraud, it will be recommended that Copeland's motion to dismiss be denied.

**B. Motion to Dismiss the Indictment Due to Entrapment by Estoppel**

Copeland argues that the undisputed extrinsic evidence establishes as a matter of law the defense of entrapment by estoppel, as well as the inability of the government to prove the requisite intent required to convict Copeland of the charges pending against her. Specifically, Copeland contends that the government, for a period of over seven years, affirmatively communicated to Copeland that her act of pursuing and receiving double the benefits would not be treated as a crime, but rather as a form of cash advance which would be remedied in a self-executing administrative manner resembling overdraft protection related to a checking account.

Entrapment by estoppel, an affirmative defense grounded in the Due Process Clause of the Fifth Amendment, "is a defense that is rarely available." *United States v. Howell*, 37 F.3d 1197, 1204 (7th Cir. 1994). This defense "applies when, acting with actual or apparent authority, a government official affirmatively assures the defendant that certain conduct is legal and the defendant reasonably believes that official." *Id*.; *see also Raley v. Ohio*, 360 U.S. 423 (1959); *United States v. Laub*, 385 U.S. 475 (1967). In order for the defense to apply there must be "an affirmative misrepresentation of the law by a government official, reasonable reliance, and action upon that misrepresentation by

7

a defendant." *Id*. The defense may apply even if the government official did not have an intent to deceive the defendant. *See Raley*, 360 U.S. at 438-39.

"When the defense is applicable, it prevents the government from punishing one who reasonably followed the misstatement of one of its own officials." *Howell,* 37 F.3d at 1204. This is because "[t]o allow such punishment 'would be to sanction the most indefensible sort of entrapment by the State--convicting a citizen for exercising a privilege which the State clearly had told him was available to him.'" *Id*. (quoting *Raley*, 360 U.S. at 438.)

Here, the defendant argues that the SSA's prompt discovery of (1) Copeland's receipt of double payments on each of the 27 occasions she sought a second check, (2) the prompt mailing of a letter to Copeland advising her that they had discovered the double payment and would recover the money through automatic deductions, and (3) the failure to mention on any of these 27 occasions that her behavior was illegal, conclusively establish the elements of entrapment by estoppel. Although Copeland concedes that no SSA official ever affirmatively told Copeland that seeking a double payment was permissible, she contends that the SSA, by its behavior, assured her that pursuing double payments was a form of cash advance rather than a criminal offense.

Relatedly, Copeland argues that the incontrovertible facts which establish the defense of entrapment by estoppel also demonstrate that, as a matter of law, the government is incapable of proving beyond a reasonable doubt the requisite intent needed to obtain a conviction of Copeland. In order to obtain a conviction, the government must prove beyond a reasonable doubt that Copeland acted with "intent to defraud." This requires proof that Copeland acted "with the specific intent to deceive or cheat the victim, either for financial gain or to cause financial loss." *United States v. Giles*, 246 F.3d 966, 973 (7th Cir. 2001). "The scheme must be reasonably calculated to deceive

8

persons of ordinary prudence. *Id*. According to Copeland, because she was led to believe her conduct was not a criminal offense, she could not have possessed the requisite intent to defraud.

In response, the government argues that there are no proffered facts which indicate that a government official affirmatively told the defendant that it was lawful to lie to the SSA. According to the government, the defendant's alleged subjective belief that her actions were lawful, based on the government's inaction, falls short of establishing the defense of entrapment by estoppel. Moreover, the government argues that the defendant's motion fails to explain how her actions were objectively reasonable.

Ordinarily, an indictment "should be tested solely by its sufficiency to charge an offense, regardless of the strength or weakness of the government's case." *United States v. Risk*, 843 F.2d 1059, 1061 (7th Cir. 1988); *see also United States v. George*, 403 F.3d 470, 472 (7th Cir. 2005) (Rule 12(b)(3)(B) does not cover objections to the sufficiency of the evidence). "A motion to dismiss is not intended to be a 'summary trial of the evidence.'" *United States v. Yasak*, 884 F.2d 996, 1001 (7th Cir. 1989). Moreover, the availability of an entrapment defense "is typically not amenable to pretrial resolution because whether or not entrapment occurred is a factual issue." *United States v. Johnson*, 32 F.3d 304, 307 (7th Cir. 1994). "'[T]he defense . . . is intertwined with the issue of intent and is often based on credibility determinations, which are traditionally reserved for jury resolution.'" *Id.* (quoting *United States v. Santiago-Godinez*, 12 F.3d 722, 727-28 (7th Cir. 1993)).

Copeland concedes that the applicability of entrapment by estoppel and the issue of intent are generally issues for a jury to resolve at trial. However, Copeland argues that in certain cases it is proper for the court to decide these issues prior to trial. In support of this contention, Copeland cites *United States v. Levin*, 973 F.2d 463 (6th Cir. 1991), in which the court found that the district court

9

was entitled to dismiss the indictment based on its finding that the undisputed extrinsic evidence regarding the entrapment by estoppel defense established that, as a matter of law, the government was incapable of proving beyond a reasonable doubt the intent required to convict the defendants. In *Levin*, the defendants were accused of mail fraud in relation to a merchandising campaign. *Id*. at 464. Officials from the Health Care Financing Administration ("HCFA") publicly issued letters stating that the defendant's merchandising practices did not violate HCFA regulations. *Id*.

In affirming the district court's decision to dismiss the indictment, the Sixth Circuit noted that "Rules 12(e) and (g) clearly envision that a district court may make preliminary findings of fact necessary to decide the questions of law presented by pre-trial motions so long as the court's findings on the motion do not invade the province of the ultimate finder of fact." *Id*. at 470. "[A] defense is ''capable of determination' if trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity of the defense.'" *Id*. (quoting *United States v. Covington*, 395 U.S. 57, 60 (1969)).

The court noted that, ordinarily, whether the standards for establishing the defense of entrapment by estoppel are met involve factual determinations. *Id*. at 468. However, the court found that, in that particular case, the undisputed operative facts established that the government declared the merchandising campaign was legal, and that the defendants reasonably relied on this declaration. *Id*. The court noted that the letters from the HCFA were more than "simply vague or even contradictory . . . There was active misleading. *Id*. at 467.

Copeland argues that, like the defendants in *Levin*, she is introducing indisputable extrinsic evidence which proves that on 27 prior occasions over the course of seven years, the SSA permitted her to obtain cash advances against her future benefits payments, and that this evidence enables a

10

court to conclude as a matter of law prior to trial that the government cannot prove the element of intent necessary to support a conviction. Although Copeland is correct in asserting that a court can make preliminary findings of fact and reach a conclusion as a matter of law prior to trial under certain circumstances, I am not convinced that such circumstances are presented in this case.

As an initial matter, it is not clear whether it is ever appropriate to resolve estoppel defenses on a Rule 12(b) motion in the Seventh Circuit. As stated above, the Seventh Circuit in *Johnson*, a decision which post-dates the Sixth Circuit's decision in *Levin*, noted that entrapment defenses are traditionally reserved for juries to resolve. The defendant has not cited any Seventh Circuit cases in which an entrapment defense was appropriately resolved prior to trial.

Regardless, even assuming *Levin* were to be followed in the Seventh Circuit, the facts in *Levin* and the facts in the case at hand are distinguishable. In *Levin*, the government agency made affirmative representations to the defendants that their conduct was legal. Given these clear affirmative representations, the court concluded that it would be unfair to then contradict these representations by declaring such conduct illegal.

In contrast, in the case at hand the government did not, through either its statements or conduct, make an affirmative representation that Copeland's conduct was legal and constituted an acceptable form of seeking a cash advance. To be sure, the SSA did not explicitly inform her that her conduct was illegal, and may have consistently imposed non-criminal penalties over a period of years. However, the imposition of non-criminal penalties for improper conduct is far different from explicitly stating, as was the case in *Levin*, that the defendant's conduct was acceptable and legal. Although the government's conduct may have caused the defendant to believe that she would only be punished through non-criminal penalties, whether the government's conduct would lead the

11

defendant to reasonably believe her conduct was, in fact, legal is a factual issue and the province of the jury.²

In sum, the incontrovertible facts described by the defendant do not conclusively establish, as a matter of law, that the government is incapable of proving Copeland's intent due to the applicability of the defense of entrapment by estoppel. It is for the jury to decide this issue after a full presentation of the evidence at trial.

Consequently, to the extent that Copeland's motion to dismiss is predicated on the establishment of the defense of entrapment by estoppel and the inability of the government to prove the requisite intent, it will be recommended that Copeland's motion to dismiss be denied.

**C. Motion to Dismiss the Indictment for Pre-Indictment Delay**

Copeland argues that it is fundamentally unfair for the government to place her in a position where, in order to prove her defense that there was no intent to defraud and no false statement, she must recall her specific communications with the SSA regarding her receipt of benefit checks some three years after the communications occurred. According to Copeland, this is a violation of due process and warrants dismissal of the indictment.

---

²Copeland also argues that the situations in *Raley* and *Laub* are similar to this case. However, both cases are distinguishable from the case at hand. In *Raley*, a committee chairman affirmatively told the defendants that they had a right to assert privilege, and they were subsequently charged for invoking privilege. 360 U.S. at 432. The Supreme Court found that this was active misleading, as the State had clearly told the defendants that the privilege was available to them. *Id*. In *Laub*, the State Department had consistently taken a position that there was no statute which provided a penalty for the conduct for which the defendants were indicted. 385 U.S. at 485. As in *Levin*, both *Raley* and *Laub* involved affirmative statements by government officials that the defendants' conduct was proper and legal. Again, in the case at hand, the government did not affirmatively communicate to Copeland that her conduct was legal.

12

"[T]he statute of limitations for a particular crime generally serves as a safeguard for defendants against unreasonable prosecutorial delay." *United States v. Henderson*, 337 F.3d 914, 919 (7th Cir. 2003). "So long as the indictment is sought within the applicable time frame, and notwithstanding the possible loss of evidence or faded memories, the defendant will normally be able to defend himself adequately." *Id*.

However, in certain circumstances, a defendant "may establish a due process violation if the prosecutorial delay caused actual and substantial prejudice to the defendant's right to a fair trial." *Id*. In order to determine whether the due process clause requires the dismissal of an indictment because of undue pre-indictment delay, a court must engage in a two-step analysis: (1) the defendant must prove actual and substantial prejudice; and (2) the court must weigh the prejudice to the defendant against the government's reasons for the delay. *United States v. Nichols*, 937 F.2d 1257, 1260 (7th Cir. 1994). If a defendant does not make an initial showing of actual and substantial prejudice, the court need not perform the second step of the analysis. *Henderson*, 337 F.3d at 920.

In a case alleging a violation of due process, "allegations of prejudice must be 'specific, concrete, and supported by evidence--vague, speculative, or conclusory allegations will not suffice.'" *Pharm v. Hatcher*, 984 F.2d 783, 787 (7th Cir. 1993) (quoting *United States v. Fuesting*, 845 F.2d 664, 669 (7th Cir. 1988)). "The mere passage of time in itself is not enough to show prejudice." *Nichols*, 937 F.2d at 1260. "[T]he prejudice must be concrete and substantial; a defendant is not deprived of due process if [she] is only 'somewhat prejudiced by the lapse of time.'" *United States v. Canoy*, 38 F.3d 893, 902 (7th Cir. 1994). Moreover, "[i]t is not enough simply to speculate . . . that witnesses' memories might have faded because of the passage of time." *Aleman v. Judges of the Circuit Court*, 138 F.3d 302, 310 (7th Cir. 1998). Although the Seventh Circuit has recognized that

13

"some faded memory claims could potentially rise to a constitutional violation," a faded memory claim is a type of claim the Seventh Circuit has found "inherently speculative." *Hatcher*, 984 F.2d at 787 (citing *United States v. Juarez*, 561 F.2d 65, 67 (7th Cir. 1977)).

Copeland concedes that bare allegations of faded memory are insufficient to establish prejudice for purposes of a due process violation. However, Copeland argues that, given her particular circumstances, she should not be held to as high a standard of establishing prejudice as in a typical case involving pre-indictment delay. Specifically, Copeland claims that she should be allowed to more easily meet her burden because she is the best and only defense witness regarding her *mens rea* on the relevant dates of the alleged mail fraud, and because the alleged scheme is seven years in duration. Copeland argues that, due to the delay in bringing charges, she is unable to testify whether any of the charges set forth in the indictment are false because there may be instances when she legitimately sought a replacement check.

As an initial matter, Copeland has not presented any legal authority to support her contention that she should be held to a lower standard of showing prejudice due to her particular circumstances. Although her particular circumstances may be relevant to the question of whether she has established actual and substantial prejudice, the standards for establishing prejudice do not change based upon the situation. As such, in order to meet her burden of establishing actual and substantial prejudice, Copeland's allegations of prejudice must be specific, concrete, and supported by evidence.

Copeland has failed to meet her burden, as her allegations of prejudice are vague and speculative. To be sure, Copeland alleges that, due to the delay, she may be unable to testify as to whether there were times that she actually legitimately sought a replacement check. However, Copeland only offers vague speculation that she may have made legitimate requests, and does not

14

offer any concrete evidence in support of this contention. She does not offer any estimate as to how many of the 27 alleged illegal transactions, if any, were actually legitimate.

Moreover, as suggested by the defendant's other pretrial motions, it appears that Copeland's primary defense is that she continued in her actions because she was under the impression that what she was doing was legal and a form of cash advance. Whether or not Copeland can remember any instances when she legitimately sought a replacement check does not impact this defense. Copeland's speculation that her faded memory may impact her ability to remember details related to a secondary defense is insufficient to establish actual and substantial prejudice. Such being the case, to the extent that Copeland's motion to dismiss is predicated on pre-indictment delay, it will be recommended that Copeland's motion to dismiss be denied.

**D. Motion to Compel Discovery Relevant to a Selective Prosecution Claim**

Copeland has filed a motion seeking discovery of certain information which she hopes will support a claim of selective prosecution. More precisely, Copeland argues that the government should call upon the SSA to assemble from its own file documents in order to corroborate or refute her claim of selective prosecution based on her race. On January 29, 2008, counsel for Copeland wrote a letter to the government seeking discovery from the SSA regarding the number of instances of double check negotiation from each of the counties in the Eastern District of Wisconsin, and information regarding the SSA's investigations and decisions regarding prosecution with these double check negotiation schemes in each of those counties. On February 5, 2008, the government sent a letter refusing to tender the requested materials.

Ordinarily, "so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge

15

to file or bring before a grand jury, generally rests entirely in his discretion." *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (quoting *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978). However, "a prosecutor's discretion is 'subject to constitutional constraints.'" *Id*. (quoting *United States v. Batchelder*, 442 U.S. 114, 125 (1979). Included among these constraints, as "imposed by the equal protection component of the Due Process Clause of the Fifth Amendment . . . , is that the decision whether to prosecute may not be based on 'an unjustifiable standard such as race, religion, or other arbitrary classification.'" *Id*. (quoting *Oyler v. Boles*, 368 U.S. 448, 456 (1962)).

Given that "[d]iscovery . . . imposes many of the costs present when the Government must respond to a prima facie case of selective prosecution. . . [t]he justifications for a rigorous standard for the elements of a selective-prosecution claim . . . require a correspondingly rigorous standard for discovery in aid of such a claim." *Id*. at 468. Consequently, in order to obtain discovery on a claim of selective prosecution, a defendant must show some evidence tending to show the existence of the essential elements of the defense, i.e., discriminatory effect and discriminatory intent. *Id.*

To establish discriminatory effect, "an African American claimant must demonstrate that a law or regulation was enforced against [her], but not against similarly situated individuals of other races." *United States v. Barlow*, 310 F.3d 1007, 1010 (7th Cir. 2002) (citing *Armstrong*, 517 U.S. at 465). Stated another way, "a defendant must at least produce some evidence that similarly-situated defendants of other races could have been prosecuted but were not." *United States v. Hayes*, 236 F.3d 891, 895 (7th Cir. 2001) (citing *Armstrong*, 517 U.S. at 469.) The defendant may use statistics to "address the crucial question of whether one class is being treated differently from another class that is otherwise similarly situated." *Chavez v. Ill. State Police*, 251 F.3d 612, 638 (7th Cir. 2001). However, the usefulness of statistics "'depends on all of the surrounding facts and circumstances.'"

16

*Id.* (quoting *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 340 (1977)). "[R]aw statistics regarding overall charges say nothing about charges brought against *similarly situated defendants*." *United States v. Bass*, 536 U.S. 862, 864 (2002) (emphasis in original).

In support of her request for discovery, Copeland notes that all of the 22 defendants charged with double check negotiation in federal court, as well as all of the 60 defendants charged with double check negotiation in state court, are African American. Copeland also points out that the SSA elected to only target its investigation to individuals in Milwaukee, Racine, and Kenosha, which are the counties in Wisconsin with the highest proportion of African American residents. Copeland has learned that prosecution in state court versus federal court was based on the amount of loss perceived by the government, and that prosecution would be made in state court if the perceived loss was less than $10,000 but more than $2,500.

Copeland further notes that she was informed by Milwaukee County Assistant District Attorney David Feiss ("Feiss") that the only felony prosecutions declined by his office were those that could not be proven beyond a reasonable doubt due to a lack of documentary evidence. Feiss stated that the SSA provided a spreadsheet with the identity and pertinent facts of the alleged Social Security fraud perpetrators, and the targeted perpetrators were then divided between the United States Attorney's Office and the district attorneys for Milwaukee, Racine, and Kenosha counties. Feiss was not aware of whether the SSA failed to bring to the federal or state government's attention individuals who were suspected of committing Social Security fraud, but were races other than African American.

Copeland also points to an article in the Milwaukee Journal Sentinel, in which United States Attorney Steven Biskupic is quoted as stating "You don't want to give someone a pass because it

17

wasn't caught in the past . . . It is a much bigger problem than the cases that are charged." (Def.'s Br. at 25.)

Copeland concedes that this is the only evidence she is able to produce to demonstrate that similarly situated individuals of other races could have been prosecuted but were not. However, Copeland argues that this evidence is sufficient to establish discriminatory effect. Copeland's argument is unavailing.

Simply stated, Copeland has failed to produce evidence of differential treatment of similarly situated persons who are not African American. Although Copeland has produced statistics which demonstrate that all of the defendants charged by the government are African American, these statistics fail to identify similarly situated persons who are not African American who could have been charged with the same offenses as the defendant but were not. As noted above, raw statistics pertaining to overall charges are not evidence that charges are not being brought against similarly situated defendants. *See Armstrong*, 517 U.S. at 470 (finding that the evidence, including a study from the Public Defender's Office indicating that all crack distribution cases closed by that office in 1991 involved African-American defendants, was insufficient to meet the burden of showing some evidence of discriminatory effect in order to obtain discovery); *see also Wilson v. McRae's Inc.*, 413 F.3d 692, 695 (7th Cir. 2005) (finding that evidence that 90% of all persons arrested for shoplifting in a store were either black or Hispanic failed to create a prima facie case of discriminatory prosecution).

Moreover, even assuming that Copeland could meet the burden of demonstrating discriminatory effect, she has still not presented sufficient evidence to demonstrate discriminatory intent. To be sure, Copeland argues that the evidence supporting the alleged discriminatory effect

18

informs the issue of discriminatory intent. However, statistics cited to show discriminatory effect are not sufficient, in and of themselves, to support an inference of discriminatory intent. *See Chavez*, 251 F.3d at 647 (statistics used to show discriminatory effect may not be the sole proof of discriminatory intent). Here, Copeland does not offer any evidence of discriminatory intent beyond the raw statistics used to support her claim of discriminatory effect. Such being the case, Copeland has failed to meet her burden of showing some evidence of discriminatory intent.

In sum, Copeland has failed to provide sufficient evidence of both discriminatory effect and discriminatory intent to justify entitlement to discovery on her claim of selective prosecution. Consequently, it will be ordered that Copeland's motion to compel discovery relevant to a selective prosecution claim be denied.

### III. RECOMMENDATION AND ORDERS

**NOW THEREFORE IT IS RECOMMENDED** that Copeland's Motion to Dismiss Count One Pursuant to Fed. R. Crim. P. 7(c)(1) be **DENIED**;

**IT IS FURTHER RECOMMENDED** that Copeland's Motion to Dismiss the Indictment Due to Entrapment by Estoppel be **DENIED**;

**IT IS FURTHER RECOMMENDED** that Copeland's Motion to Dismiss the Indictment for Pre-Indictment Delay be **DENIED**;

**NOW THEREFORE IT IS ORDERED** that Copeland's Motion to Compel Discovery Relevant to a Selective Prosecution Claim be and hereby is **DENIED**.

Your attention is directed to 28 U.S.C. § 636(b)(1)(A) - (C), Federal Rule of Criminal Procedure 59(a) - (b), and General Local Rule 72.3 (E.D. Wis.), whereby written objections to any order or recommendation herein or part thereof may be filed within ten days of the date of service

of this recommendation and order. Objections are to be filed in accordance with the Eastern District of Wisconsin's electronic case filing procedures. Courtesy paper copies of any objections shall be sent directly to the chambers of the district judge assigned to the case. Failure to object in accordance with the rules cited herein waives your right to review.

**SO ORDERED** this 3rd day of March, 2008, at Milwaukee, Wisconsin.

/s/ William E. Callahan, Jr.  
WILLIAM E. CALLAHAN, JR.  
United States Magistrate Judge