UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                        Case No. 08-CR-10

MARILYN COPELAND,

    Defendant.

**RECOMMENDATION ON DEFENDANT'S MOTION TO SUPPRESS**

**I. BACKGROUND**

On January 3, 2008, a grand jury sitting in the Eastern District of Wisconsin returned a two-count indictment naming Marilyn Copeland ("Copeland") as the defendant. Count One of the indictment charges Copeland with mail fraud in violation of 18 U.S.C. § 1341, and Count Two charges Copeland with making a false statement to the Social Security Administration ("SSA") concerning rights to benefits in violation of 42 U.S.C. § 1383a(a)(2). On January 8, 2008, Copeland was arraigned and entered a plea of not guilty to both counts. Trial is currently scheduled to commence before the Honorable Charles N. Clevert on April 7, 2008.

In accordance with the pretrial scheduling order, on February 7, 2008, Copeland filed (1) a motion to dismiss Count One of the indictment pursuant to Fed. R. Crim. P. 7(c)(1); (2) a motion to dismiss the indictment due to the applicability of the defense of entrapment by estoppel; (3) a motion to dismiss the indictment for prosecutorial delay; (4) a motion to compel discovery relevant to a selective prosecution claim; and (5) a motion to suppress statements. On March 3, 2008, this court

issued a Recommendation and Order addressing all of Copeland's motions, save her motion to suppress. This is because an evidentiary hearing with respect to her motion to suppress was conducted on February 27, 2008, and the parties were given until March 7, 2008, to file their post-hearing briefs on the issues raised at such hearing. Those post-hearing briefs have now been filed. Thus, the defendant's motion to suppress is fully briefed and ready for resolution. For the reasons which follow, it will be recommended that Copeland's motion to suppress be denied.

## II. DISCUSSION

The following is a summary of the testimony adduced at the evidentiary hearing. Only one witness testified at the evidentiary hearing: Special Agent Michael Clemens ("Clemens") of the Social Security Administration (SSA), Office of Inspector General, Office of Investigations. Clemens testified that on May 17, 2007, he and FBI Special Agent Jason Pleming ("Pleming") interviewed defendant Marilyn Copeland at her residence at 3864 N. 5th Street, Milwaukee, Wisconsin. They arrived at her residence at approximately 4:45 p.m. At that time, they were both dressed casually. Although Clemens was carrying a weapon, it was not visible, as it was concealed under a vest that he was wearing. However, Clemens was wearing around his neck a photo courthouse identification card, identifying him as assigned to "SSA-OIG." The agents knocked on the front door and eventually Copeland came to the door. Pleming and Clemens identified themselves as being from the Payee Review Team and asked if they could speak to Copeland about some Social Security checks that they were investigating and her serving as a representative payee. Copeland, who is forty years old, invited them in.

As best as Clemens could recall, the agents sat with Copeland in her living room, with Pleming sitting next to Copeland. They told her that the questions they wanted to ask her would take

2

no more than 15 minutes or so of her time. They showed her a number of Social Security checks (approximately 50) and asked her if she had received those checks. They asked her if she endorsed the checks. She admitted endorsing all of the checks, although there were a couple of checks which she initially hesitated admitting to having endorsed.

During the course of the interview, an interview form was completed by including therein the statements made by Copeland. The interview form stated that Copeland was voluntarily making her statements to law enforcement officers. Copeland read the statements that had been entered onto the form out loud and signed her name to the form. It was not until Copeland had orally made incriminating statements about endorsing and cashing the Social Security checks that Clemens and Pleming told her that they were law enforcement officers.

At no time prior to her making any incriminating statements, nor at any time during the interview, which lasted only about 15-20 minutes, did the agents promise Copeland anything in return for her giving a statement. Nor did they make any threats in order to persuade her to do so. Copeland did not appear to be under the influence of alcohol or drugs. She was lucid, coherent and knew what was going on. She was particularly well spoken and appeared to be intelligent. At no time did she ask the agents to leave; nor did she ask the agents to stop the interview; nor did she say that she wanted to talk to a lawyer. The agents did tell her that she was not under arrest.

At no time did the agents discuss a repayment plan with Copeland. At no time did the agents discuss "settling" with Copeland. At some point towards the end of the interview Copeland asked the agents what was going to happen to her. Clemens told her that they would be referring the matter to the U. S. Attorney or the District Attorney. By the end of the interview, Copeland was still cordial to the agents.

3

The defendant argues that her statement was not voluntary and therefore should be suppressed. Copeland's argument must be rejected. The uncontradicted evidence demonstrates that the statement which Copeland gave to the agents at her home on the afternoon of May 17, 2007, was the product of a free will, and not the product of coercive law enforcement activity.

A confession is voluntary if, in light of the totality of the circumstances, the confession is the product of a rational intellect and free will and not the result of physical abuse, psychological intimidation, or deceptive interrogation tactics that have overcome the defendant's free will. *See Watson v. DeTella*, 122 F.3d 450, 453 (7th Cir.1997); *see also Moran v. Burbine*, 475 U.S. 412, 421 (1986). The crucial question in determining whether a statement was given voluntarily is "whether the defendant's will was overborne at the time he confessed." *Lynumn v. Illinois*, 372 U.S. 528, 534 (1963).

Coercive police activity is a "necessary predicate" to a determination that a confession was not voluntarily made. *United States v. Fazio*, 914 F.2d 950, 956 (7th Cir. 1990). Unless there is police conduct causally related to the confession, a confession is considered voluntary. *Colorado v. Connelly*, 479 U.S. 157, 164 (1986). The factual inquiry centers upon the conduct of law enforcement officials in creating pressure and the suspect's capacity to resist that pressure. *Mincey v. Arizona*, 437 U.S. 385, 399-401 (1978).

Courts have generally held that the following practices are insufficiently coercive to constitute a Fifth Amendment violation: (1) promises of leniency; *United States v. Harris*, 914 F.2d 927, 933 (7th Cir. 1990); (2) confrontation of the accused with other evidence of guilt, *Ray v. Duckworth*, 881 F.2d 512, 518 (7th Cir. 1989); and, (3) an interrogator's false or misleading statements. *United States v. Rutledge*, 900 F.2d 1127, 1131 (7th Cir. 1990). Merely pointing out, what is anyway obvious, that

4

cooperation with the police can result in a reduced sentence or other concessions down the road is not a promise and is not calculated to prevent the suspect from rationally considering whether or not to speak. *United States v. Ramirez*, 112 F.3d 849 (7th Cir. 1997).

In determining voluntariness, factors which may be taken into consideration are:

> the youth of the accused; his lack of education or his low intelligence; the lack of any advice to the accused of his constitutional rights; the length of detention; the repeated and prolonged nature of questioning; and the use of physical punishment such as the deprivation of food or sleep.

*Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973).

Other factors the court commonly considers in assessing the totality of the circumstances surrounding testimonial evidence supplied by a defendant are: (1) the location of the questioning, *United States v. Buckley*, 4 F.3d 552, 560 (7th Cir. 1993); (2) whether *Miranda* warnings were given, *Richardson v. Duckworth*, 834 F.2d 1366, 1371-72 (7th Cir. 1987); and (3) whether the accused initiated contact with law enforcement officials, *United States v. Gentry*, 925 F.2d 186, 188 (7th Cir. 1991). An accused's experience with the criminal justice system is also a factor in the totality test. *Lord v. Duckworth*, 29 F.3d 1216, 1222 (7th Cir. 1994).

To be sure, in this case the agents did not advise Copeland of her *Miranda* rights before they began to question her. But, it was not necessary to do so because Copeland clearly was not in custody at the time of the interview. Indeed, she was in her own home. Moreover, she was not restrained in any way, and the interview took only 15 to 20 minutes to complete. *See United States v. Thompson*, 496 F.3d 807 (7th Cir. 2007) (defendant interviewed by FBI agents at his home regarding bank robbery was not in custody).

5

The uncontradicted evidence also demonstrates that her statement was voluntarily given. Copeland is not a person of tender years. As previously stated, she is forty years old. During the course of the interview, she was not threatened; nor was she promised anything in return for her statement. At all times, she was cordial, articulate and responsive to the agents' questions. Indeed, she questioned whether she had endorsed several of the checks because they were endorsed in the name of the payee. That she would have the self-confidence to challenge the agents on such matter would suggest that she was not cowed or intimidated by them.

To be sure, the defendant argues that the agents did not initially identify themselves as law enforcement agents and "[t]he purpose for not identifying themselves as law enforcement was to induce [her] to be cooperative." (Def's Br. at 2.) According to the defendant, "[i]t is doubtful that [she] would have given a statement had she known that Clemens and Pleming were law enforcement and that the purpose of the visit was not to review her benefits." (Def's Br. at 3.) But there is no evidence to support the defendant's argument. To the contrary, and to reiterate, the uncontradicted evidence is that there were no threats or promises made in order to obtain a statement from Ms. Copeland and that she was at all times cordial and relaxed. For the defendant to argue that she would not have given a statement to Clemens and Pleming had she known that they were law enforcement is, at least on the basis of this record, sheer speculation.

In short, the government has demonstrated that Copeland's May 17, 2007 statement to the agents was freely and voluntarily given; it was the product of a free will.

The defendant also argues that Ms. Copeland's statement should be suppressed pursuant to Fed. R. Evid. 408. Specifically, she argues that

6

> Rule 408 mandates excluding from evidence her statements to Agent Clemens and Agent Pleming. The 2006 Amendment [to Rule 408] presupposes that statements or conduct during compromise negotiations with a government regulatory, investigative or enforcement agency are admissible in a criminal case when a second agency is involved in the criminal prosecution, distinct from the agency involved in the civil process. *See, e.g., Prewitt*, 34 F.3d at 439. Here, both the FBI and SSA OIG's Office were involved in the civil process *and* the criminal process, calling into question the applicability of the exception set forth in Rule 408(a)(2). In other words, the statements here were taken under the guise of settlement negotiations with the Benefit Review Team, even though the actual intent was for criminal prosecution.

(Def's Br. at 6.)

I disagree. Rule 408 provides, in pertinent part, as follows:

(a) Prohibited uses. — Evidence of the following is not admissible on behalf of any party, when offered to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount, or to impeach through a prior inconsistent statement or contradiction:

. . . .

(2) conduct or statements made in compromise negotiations regarding the claim, except when offered in a criminal case and the negotiations related to a claim by a public office or agency in the exercise of regulatory, investigative, or enforcement authority.

Simply stated, there is no evidence that the discussions which took place between the agents and Ms. Copeland were in the nature of "compromise negotiations." To the contrary, the uncontradicted testimony of Clemens is that at no time did the agents discuss a repayment plan with Copeland; nor was there any discussion of "settling" with Copeland. Thus, Rule 408 is entirely inapplicable to the statements made by Ms. Copeland.

In conclusion, and for all of the foregoing reasons, it is recommended that Copeland's motion to suppress be denied.

7

**NOW THEREFORE IT IS RECOMMENDED** that the defendant's motion to suppress be **DENIED**.

Your attention is directed to 28 U.S.C. § 636(b)(1)(B) - (C), Federal Rule of Criminal Procedure 59(b)(2), and General Local Rule 72.3 (E.D. Wis.), whereby written objections to any recommendation herein or part thereof may be filed within ten days of the date of service of this recommendation. Objections are to be filed in accordance with the Eastern District of Wisconsin's electronic case filing procedures. Courtesy paper copies of any objections shall be sent directly to the chambers of the district judge assigned to the case. Failure to object in accordance with the rules cited herein waives your right to review.

**SO ORDERED** this 10th day of March 2008, at Milwaukee, Wisconsin.

                                                  s/ William E. Callahan, Jr.
                                                  WILLIAM E. CALLAHAN, JR.
                                                  United States Magistrate Judge